UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

JUSTIN A. WADSWORTH,

Defendant.

Case No. 20-cr-40045-JPG

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant Justin Wadsworth's *pro se* motion for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 89). The Government filed a response (Doc. 91), and Wadsworth filed a reply (Doc. 92). While the motion was pending, Wadsworth filed a supplemental medical update concerning an appointment he had after he filed his reply (Doc. 103). The Government filed a response to the supplement (Doc. 104).

## I. LEGAL STANDARD

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *Rutherford v. United States*, 146 S. Ct. 1320, 1328 (2026). The relevant portion

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as granting mercy for an ailing or aged defendant. *See Fernandez v. United States*, 146 S. Ct. 1292, 1303 (2026).

of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 62 F.4th 391, 393 (7th Cir. 2023); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise, the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2025), the policy statement applicable to

motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2) (2025).[2] The policy statement further defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

> **(1) Medical Circumstances of the Defendant.**—
>
> > **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > **(B)** The defendant is—
> >
> > > **(i)** suffering from a serious physical or medical condition,
> > >
> > > **(ii)** suffering from a serious functional or cognitive impairment, or
> > >
> > > **(iii)** experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> >
> > **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
> >
> > **(D)** The defendant presents the following circumstances—
> >
> > > **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> > >
> > > **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

> complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b) (2025).

For a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A); *see Rutherford*, 146 S. Ct. at 1333 (describing distinct analytical steps beginning with eligibility by establishment of extraordinary and compelling reason). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfies that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13 (2025).

## II. <u>ANALYSIS</u>

In June 2022, Wadsworth pled guilty to one count of attempted enticement of a minor and one count of attempted commercial sex trafficking of a child. He was sentenced to the mandatory minimum of 180 months. His current projected release date is November 21, 2035. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Oct. 19, 2026).

Now, after serving less than four years of his sentence, Wadsworth requests compassionate release. His motion states that he is suffering from multilevel degenerative disc disease that requires spinal surgery. He argues that the Bureau of Prisons ("BOP") has delayed his necessary

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

spinal surgery for months. He further contends that, even if the BOP eventually provides the surgery, it will be unable to adequately manage his pain or provide physical therapy following the procedure. Finally, he asserts that he is a hardworking man who provided for his family and had no prior criminal history; that the three years he has served have afforded adequate deterrence against future criminal conduct; and that there is less concern about protecting the public because he spent 33 months on pretrial supervision with no violations and was permitted to self-surrender.

In response, the Government argues that Wadsworth's medical condition is not an extraordinary or compelling reason for his release because the condition existed at the time he was sentenced and he is receiving more than adequate treatment for his spinal condition. It further argues that, even if Wadsworth did qualify for compassionate release, the §3553(a) factors weigh squarely in favor of continued detention. It emphasizes that Congress set the mandatory minimum sentence for commercial sex trafficking of a child at 180 months and that Wadsworth was suffering from the same medical condition when he was sentenced.[4]

A. Extraordinary and Compelling Reason:

The Court does not dispute that Wadsworth suffers from a back condition that requires surgery. However, his condition is not an extraordinary and compelling reason for his release because it is being adequately managed by the BOP.

Wadsworth arrived at the BOP in February 2023. The first time that surgery was mentioned was in October 2025, when it was noted that Wadsworth was open to surgical intervention and he would need surgical clearance prior to any surgery. Since then, the BOP has taken a series of steps to schedule Wadsworth's surgery. It was noted as early as January 7, 2026, that he had a pending

[4] The Government has not invoked exhaustion of remedies as a defense, so it has waived that argument.

consult for surgical clearance for low back surgery. He received an MRI on June 16, 2026, and it was noted that he needs medical clearance for possible OR with neurosurgeon and he likely will need to be transferred to a medical facility for physical therapy after surgery. He had a neurosurgery consultation on August 25, 2026. The treatment note prepared after his neurosurgery consultation states that he needs a chest x-ray and medical clearance for OR with neurosurgery. He has a chest x-ray scheduled for September 28, 2026.

Wadsworth provides no evidence to support his allegation that, even if the BOP eventually provides surgery, it will be unable to provide him with adequate treatment afterward. His argument assumes that he will remain at FCI Forrest City Low following surgery, but he provides no evidence that he will. In fact, his medical records include a recommendation that he be transferred to another facility for physical therapy following surgery. Further, his complaints that he has not received adequate pain management or physical therapy are refuted by the evidence[5] and are more appropriately raised in a civil rights action alleging inadequate medical care, rather than in a motion for compassionate release.

In sum, the BOP is taking the necessary steps to provide Wadsworth with the required surgery, and there is no credible evidence that the BOP will be unable to provide him with adequate medical treatment thereafter. Accordingly, Wadsworth has not carried his burden of showing an extraordinary and compelling reason for his release.

B. Section 3553(a) Factors:

[5] Wadsworth claims that he is prescribed only Gabapentin, which he contends is inadequate to manage his pain. His medical records, however, indicate that Gabapentin is reliving his pain and that he has not consistently taken the recommended dosage. The Court cannot allow Wadsworth's claim for release to be bolstered by his own failure to comply with medical advice. Wadsworth also claims that the BOP does not provide on-site physical therapy, but his medical records show that on-site physical therapy was ordered for him on January 23, 2026. He also had a telehealth visit with a regional physical therapist on May 7, 2026.

Even if there were an extraordinary and compelling reason for Wadsworth's release, the § 3553(a) factors weigh against it. Wadsworth's offense was egregious. His convictions arose from his use of a cellular telephone to solicit a purported father of a purported 10-year-old daughter for the purpose of engaging in prohibited sexual conduct, for which he offered to pay $1,000. Congress has established a mandatory minimum of 180 months for commercial sex trafficking of a child. Releasing Wadsworth after he has served less than one-third of that sentence would not adequately reflect the seriousness of the offense or provide adequate deterrence to him or others who are willing to pay $1,000 to have sex with a 10-year-old girl. In addition, Wadsworth was suffering from the same back condition requiring surgery when he was sentenced. The Court considered his medical condition at sentencing and still determined that an 180-month sentence was appropriate.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Wadsworth's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)) (Doc. 89).

**IT IS SO ORDERED.**
**DATED**: **October 19, 2026**

J. Phil Gilbert

**J. PHIL GILBERT**
**United States District Judge**